IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:22-cv-410

| | |
|---|---|
| TOBISHA JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ACCORDIUS HEALTH ) <br> ) <br> Defendant. ) | **COMPLAINT** <br> **(Jury Trial Demanded)** |

Plaintiff, complaining of the Defendant, alleges and says:

## I. INTRODUCTION

1. Plaintiff, Tobisha Johnson, hereby alleges that she was subject to race discrimination and retaliation during her employment with Accordius Health, Salisbury, North Carolina. Plaintiff's claims are based on discrimination which she experienced in the terms and conditions of her employment and in the denial of a promotion and termination as well as retaliation for complaining about COVID-related matters. Plaintiff's complaints are raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* and § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## II. JURISDICTION

2. This is an action seeking legal and equitable relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* and § 1981 of the Civil Rights Act of 1866, 42

U.S.C. § 1981. Plaintiff alleges that she was discriminated against because of her race and retaliated against for complaining about COVID-related matters.

### III. PARTIES

3. Plaintiff is an African-American citizen and resident of Concord, Cabarrus County, North Carolina.

4. Defendant, Accordius Health Group, is a corporation during business in the State of North Carolina primarily providing nursing home facilities.

### IV. FACTS

5. Plaintiff was hired by Defendant in March 2020 as a director of nursing for Accordius Health Group.

6. In that position, she was responsible for ensuring that staff members complied with applicable nursing regulations, state and federal regulations regarding the health care of nursing home patients.

7. On July 27, 2020, Plaintiff was directed to go to the Citadel Facility located in Salisbury, North Carolina to assist the staff because the state inspectors were in the building. She was told that she would be at the facility for a few days. The former Director of Nursing, Lee Ann Russo, was being terminated from the Citadel and was asked to leave the facility when the state surveyor cited her, stating it was unsafe for her to be the director of nursing at the facility.

8. Plaintiff was then told that she needed to be the interim director of nursing at Citadel until a permanent replacement for Russo could be found. Plaintiff agreed to do so until a new director of nursing could be found or until a corporate position became available. Plaintiff had been inquiring about transferring into a consultant role and applied for the corporate director

of quality assurance position while she was still working at the Defendant's facility located at 635 Statesville Boulevard, Salisbury, North Carolina.

9. Plaintiff interviewed for the corporate director of quality assurance position on or about August 28, 2020 and was unofficially offered the position. She was told that the corporate director of quality assurance position would be held for her until a permanent director of nursing could be found for the Citadel facility.

10. Plaintiff experienced a severe staffing shortage at the Citadel and the company was unsuccessful in hiring sufficient staff to run the facility. The facility had been cited for having one of the highest COVID rates among nursing home facilities in Salisbury, North Carolina. As a result of the staff shortage, Plaintiff was required, in addition to her duties as Director of Nursing, to work on the floor and in every other capacity in the nursing department, such as chart nurse, the charge nurse, supervisor and even a nursing assistant.

11. The corporate team visited the Citadel and upon seeing the staffing and the hard work that Plaintiff was performing promised her that they would get coverage so that she could transfer to the quality assurance role. That staff shortage continued for over two weeks until the Plaintiff took the initiative to recruit from a temporary agency people who had worked with her in other facilities and who were aware of her work ethic and standards. Plaintiff was again promised a transfer to the corporate director of quality assurance position. She was directed to start hiring permanent staff for the Citadel. However, all of the recommendations that Plaintiff made for hiring were rejected by the administrator or persons at the corporate office. Plaintiff remained in the interim Director of Nursing position. At the end of September 2020, she was told by corporate office that the corporate quality assurance position that she had been promised was no longer available to her. Plaintiff was forced to clean her office out at her previous

location, 635 Statesville Boulevard, Salisbury, North Carolina to become the full-time Director of Nursing at the Citadel instead of Interim Director of Nursing at the Citadel. Plaintiff was successful in addressing many of the deficiencies that had been noted by state investigators. For that work, she received numerous positive comments.

12. Despite her hard work and success, the corporate office began to treat Plaintiff negatively. She was not invited to attend certain recruiting interviews and when she expressed concerns about the extensive criminal history of one applicant, she was ignored and that employee was hired anyway. Plaintiff repeatedly expressed concerns about the facility's non-compliance with COVID quarantine procedures. Only after months of Plaintiff being present at the facility did it come into compliance.

13. On or about October 26, 2020, the Director of Nursing from the Clemmons facility, which was rated even worse than the Citadel, was brought to the Citadel and introduced in the morning staff meeting by a corporate as being sent from corporate to help out. The very next day, Plaintiff was told by a corporate and corporate HR that effective immediately, that employee, Doris Nance, would assume the role of Director of Nursing and that she had the choice to be a unit manager with a significant pay cut. It was also suggested to Plaintiff that she could just draw unemployment. When Plaintiff inquired whether she was fired, she was told that she was not fired but that she would have a day to think about whether to accept the unit manager position with a significant pay cut. Doris Nance, when serving as the Director of Nursing at the Clemmons facility had records for state violations and infractions that were more severe than that which Plaintiff inherited when she joined the Citadel. Further, the prime Director of Nursing, Lee Ann Russo, a white female, was only removed from the building when the state ordered that she be removed for failure to adhere to even the basic COVID precautions

and her failure to enforce them throughout the building. Both Nance and Russo are white females. After learning that Nance was being appointed as Director of Nursing, Plaintiff asked if she was being fired. She was told that she was not being fired and was praised for doing a good job.

## V. CLAIMS FOR RELIEF

### First Cause of Action – Race Discrimination Under Title VII and § 1981

14. Paragraphs 1 through 13 above are incorporated herein.

15. Plaintiff, despite having performed the duties of Director of Nursing as an interim was not considered for the permanent interim position. Instead, a lesser qualified white female whose work at a comparable facility had generated far more severe regulations than the facility which Plaintiff encountered was selected. There is no question that Plaintiff had been performing her job as the interim Director or Nursing in a satisfactory manner. Plaintiff was not even interviewed for the position even after the quality assurance position for which she had been promised was not offered to her. Defendant's actions in denying Plaintiff the permanent Director of Nursing position and in offering her a demotion with a pay cut amounted to race discrimination under Title VII of the Civil Rights Act of 1964 and § 1981 of the Civil Rights Act of 1866.

16. Defendant's actions have caused Plaintiff economic harm and emotional distress for which she seeks make whole relief and compensatory damages.

### Second Cause of Action – Retaliation

17. Plaintiff realleges and incorporates herein Paragraphs 1 through 16 above.

18. Plaintiff made repeated complaints to corporate officials about the non-compliance with COVID regulations which she found upon her arrival at the Citadel facility.

5

Her need for immediate staffing was left unaddressed for weeks. Plaintiff had to utilize her own resources to persuade individuals who had registered with a temporary agency to assist on a temporary basis. Only after she began hiring temporary employees was she given the authority to hire staffing members. During the time that she was seeking to hire appropriate staff, Plaintiff was advising corporate of her efforts and complaining that the facility was not in compliance with the appropriate Department of Health and Human Services ("DHS") regulations for COVID protocol. Despite her heroic efforts to bring the facility in compliance, Plaintiff was not rewarded for her efforts but instead was denied a permanent Director of Nursing position and was told that she had to decide whether she was going to accept a demotion. Defendant's actions were in retaliation for her repeated complaints about the non-compliance by corporate in ensuring adequate staffing at the Citadel facility.

19. Defendant's actions violate Title VII of the Civil Rights Act of 1964.

20. Plaintiff is entitled to make while relief and compensatory damages for emotional distress.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Plaintiff filed a complaint against Accordius Health Group. EEOC Charge No. 430-2022-006040 was filed on or about February 9, 2021.

22. Upon information and belief, The Equal Employment Opportunity Commission issued Plaintiff's Determination and Notice of Rights on March 3, 2022. Plaintiff is filing this lawsuit within 90 days of that date.

## VII. JURY TRIAL DEMAND

23. Plaintiff hereby demands a trial by jury.

## VIII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that the discrimination alleged herein be remedied in full and that the court, after a jury trial:

a. Declare the actions complained of herein to be illegal.

b. Issue an injunction enjoining the Defendant, its agents, employees, successors, attorneys and those acting in concert or participation with the Defendant and at its direction from engaging in the unlawful practices set forth herein;

c. Award Plaintiff compensatory damages for pain and suffering and infliction of emotional distress;

d. Award Plaintiff her costs and expenses in this action, including reasonable attorney's fees, costs and other litigation expenses; and

e. Grant such other and further relief as may be just and necessary to afford complete relief to Plaintiff.

Respectfully submitted, this 31st day of May, 2022.

                                          **/s/ Geraldine Sumter**
Geraldine Sumter
N.C. Bar Number 11107
Ferguson Chambers & Sumter, P.A.
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone: (704) 375-8461
Facsimile: (980) 938-4867
Email: gsumter@fergusonsumter.com

*Attorney for Plaintiff*